PRESENT:  All the Justices

CHARLES STANARD SEVERANCE

v.  Record No. 170829

COMMONWEALTH OF VIRGINIA

OPINION BY
JUSTICE D. ARTHUR KELSEY
JULY 19, 2018

FROM THE COURT OF APPEALS OF VIRGINIA

A jury found Charles Stanard Severance guilty of murdering three residents of

Alexandria, Virginia.  Severance received a separate punishment for each murder.  He appealed

to the Court of Appeals, arguing that two of his three punishments violated the Double Jeopardy

Clause of the Fifth Amendment to the Constitution of the United States.  The Court of Appeals

disagreed.  *See Severance v. Commonwealth*, 67 Va. App. 629, 799 S.E.2d 329 (2017).

Severance now repeats that argument before this Court.[1]  We likewise disagree and affirm.

I.

In December 2003, Severance murdered Nancy Dunning.  In November 2013, he

murdered Ronald Kirby.  In February 2014, he murdered Ruthanne Lodato.  Severance

committed various other crimes in addition to these murders,[2] none of which are before us on

appeal.  All of his targeted victims were, as Severance put it, members of the "enforcement

class" of society and the murders were part of his so-called "tomahawking [the] homestead" plan

---

[1] In his Petition for Appeal, Severance also assigned error to the trial court's denials of his motion to sever the murder trials and his motion to strike.  We awarded an appeal solely to address his double jeopardy argument and refused the other assignments of error.  *See Severance v. Commonwealth*, Record No. 170829, 2017 Va. LEXIS 165, at *1 (Oct. 25, 2017).

[2] Severance was found guilty of three counts of use of a firearm in the commission of a murder, one count of malicious wounding, one count of use of a firearm in the commission of a malicious wounding, and two counts of possession of a firearm by a felon.

for retribution.  R. at 6454.  His three victims included the wife of an Alexandria sheriff, a regional transportation director, and a daughter of an Alexandria Circuit Court judge.

A grand jury issued a multi-count indictment against Severance.  Two counts are relevant to this appeal.  The first charged Severance with the capital murder of Kirby in 2013.  The second charged him with the capital murder of Lodato in 2014.  Both relied upon Code § 18.2-31(8), which deems "[t]he willful, deliberate, and premeditated killing of more than one person within a three-year period" to be capital murder.  A jury found Severance guilty of both charges, concluding that he murdered Kirby within three years of murdering Lodato and that he murdered Lodato within three years of murdering Kirby.

Prior to the sentencing phase of his trial, Severance argued that punishing him for two capital murder convictions under Code § 18.2-31(8) "would violate double jeopardy."  J.A. at 16. After the trial court deferred ruling on the issue, the jury recommended life sentences for both capital murder convictions under Code § 18.2-31(8).[3]  Severance filed a motion to preclude sentencing for both capital murder convictions "[p]ursuant to the Double Jeopardy Clause of the Fifth Amendment."  J.A. at 46.

In that motion, like his earlier objection at trial, Severance did not assert that the text of Code § 18.2-31(8) forbids capital murder convictions for the separate murders of Kirby and Lodato.  Instead, invoking *Blockburger v. United States*, 284 U.S. 299 (1932), Severance argued that convicting him for both murders under Code § 18.2-31(8) — which the statute did not prohibit — would be a constitutional violation of the prohibition against multiple punishments in the Double Jeopardy Clause only if he were *punished* for both convictions.

---

[3] Pursuant to Code § 19.2-163.7, the Commonwealth waived the option to seek the death penalty for both of the capital murder convictions.  *See* J.A. at 5.

At a later hearing on Severance's double jeopardy motion, the trial court observed that the legislature

> could have said that if a second murder is committed within three years, that second murder becomes a capital murder. In other words, they could have put in a temporal limitation which meant that only the second murder could be capital murder.
>
> But by not putting in a temporal limitation, they elevated both murders. They elevated both the first and the second murder into capital murders. So it . . . represents a legislative judgment that we would view that second murder as such a[n] additional grave act in light of the first murder, and an individual who committed that second murder . . . [is] deemed to know that the legislature was going to treat that first murder as a capital murder as a result.
>
> I mean, there's no reason for this Court to conclude that that doesn't represent a legislative judgment.

J.A. at 64-65. Severance's counsel responded, "I couldn't agree more. That is exactly right . . . ."[4] *Id.* at 65.

The trial court rejected Severance's double jeopardy argument, convicted him of two counts of capital murder, and imposed two life sentences. In the Court of Appeals, Severance challenged the sentencing imposed for his two capital murder convictions solely on the ground that the constitutional "prohibition against double jeopardy precluded the trial court from *sentencing* [him] for both capital murder counts." Petition for Appeal at 60, *Severance*, 67 Va. App. 629, 799 S.E.2d 329 (Record No. 0308-16-4) [hereinafter CAV Pet.] (emphasis added); *see also* Appellant's Br. at 40, *Severance*, 67 Va. App. 629, 799 S.E.2d 329 (Record No. 0308-16-4) [hereinafter CAV Appellant's Br.].

---

[4] Severance's counsel claimed the trial court's interpretation was "different than [what he was] arguing," which was "about being twice sentenced" under Code § 18.2-31(8). J.A. at 65. Under this view, the legislature did not intend to permit "double punishment" under Code § 18.2-61(8) because it did not impose a temporal limitation and has not "amended the statute since the *Andrews* case." J.A. at 66-67.

3

In both his petition for appeal and opening brief before the Court of Appeals, Severance conceded that "the Commonwealth in this case was free to seek indictments for two counts [of] capital murder under [Code §] 18.2-31(8) for the murders of Ruthann[e] Lodato and Ronald Kirby in order 'to supply the numerical ingredient' to charge capital murder of more than one person within a three-year period." CAV Pet. at 63 (citation omitted); *see also* CAV Appellant's Br. at 42. In his reply brief in the Court of Appeals, Severance again conceded that the Commonwealth could "indict a defendant for multiple capital murders when those murders occur within the same three-year period." Reply Br. at 8, *Severance*, 67 Va. App. 629, 799 S.E.2d 329 (Record No. 0308-16-4) [hereinafter CAV Reply Br.]. The Commonwealth, he added, may also "obtain[] convictions for each indictment."[5] *Id.*

Despite the statute's authorization of separate indictments and convictions for each murder, Severance argued that the "imposition of capital sentences for both murders" violated the multiple-punishments doctrine inherent in the Double Jeopardy Clause. CAV Pet. at 63; *see also* CAV Appellant's Br. at 42-43. The Court of Appeals disagreed and held that no double jeopardy violation occurred because Severance was not sentenced twice for the same crime. Instead, Severance received one sentence for one murder and another sentence for another murder — "separate murders that were committed months apart at separate locations." *Severance*, 67 Va. App. at 651, 799 S.E.2d at 339.

II.

A.

---

[5] Notwithstanding his concession, Severance argued in his reply brief in the Court of Appeals that "when the defendant is tried for capital murder based on multiple victims, the number of capital convictions permitted is determined by the number of acts or transactions under [Code] § 18.2-31(7) or number of three-year periods under [Code] § 18.2-31(8)." CAV Reply Br. at 10.

On appeal to us, Severance again concedes that "the Commonwealth in this case was free to seek indictments for two counts of capital murder under [Code] § 18.2-31(8) for the murders" of Kirby and Lodato "in order 'to supply the numerical ingredient' to charge capital murder [for the murder] of more than one person within a three-year period." Appellant's Br. at 10-11 (citation omitted). He does not argue — and has never argued — that Code § 18.2-31(8) itself forbids either charging or convicting a defendant for the capital murder of two separate victims within the three-year period.[6] Instead, Severance claims only that "imposing capital *sentences* for each murder" violates his double jeopardy rights, and thus, "the Commonwealth should have elected which of the indictments it sought to proceed upon to seek a capital *sentence*." Appellant's Br. at 11 (emphases added).

B.

Severance's multiple-punishments argument fails for several reasons. The most fundamental flaw is his reliance on *Blockburger*. By framing his argument this way, Severance asks the wrong question and, as a result, arrives at the wrong answer. As the Court of Appeals recognized, "the *Blockburger* test only applies when '*the same act* or transaction constitutes a violation of two distinct statutory provisions.'" *Severance*, 67 Va. App. at 650-51, 799 S.E.2d at 339 (emphasis in original) (citation omitted). The Court of Appeals is correct. "The assumption underlying the [*Blockburger* test] is that [the legislature] ordinarily does not intend to punish the same offense under two different statutes." *Whalen v. United States*, 445 U.S. 684, 691-92 (1980). It is only in this one-offense/two-statutes context that the problematic statutes "are

---

[6] Nor does Severance argue it would violate double jeopardy principles if Code § 18.2-31(8) expressly authorized separate indictments and convictions for separate murders within the three-year period. His counsel disavowed this argument during oral argument before this Court. *See* Oral Argument Audio at 13:56 to 14:21.

5

construed not to authorize cumulative punishments in the absence of a clear indication of contrary legislative intent." *Id.* at 692.

In this case, Severance committed *two separate acts* of murder, *twice* violating the *same* statutory provision. In light of "the two capital murders in th[is] case," the Court of Appeals correctly reasoned, "it is unnecessary to apply the *Blockburger* test." *Severance*, 67 Va. App. at 651, 799 S.E.2d at 339. "The fact that each murder provided the predicate offense for a conviction under Code § 18.2-31(8) does not limit appellant's liability for conviction and sentencing on both charges." *Id.* at 653, 799 S.E.2d at 340. There is "no temporal restriction mandating that the first of the two murders is a predicate murder and only the second is a capital murder."[7] *Id.*

A criminal statute, either by its text alone or with the amplification of common-law presuppositions, determines the permissible unit of prosecution. *See Johnson v. Commonwealth*, 292 Va. 738, 741, 793 S.E.2d 321, 323 (2016) (determining the appropriate "unit of prosecution" by analyzing legislative intent (citation omitted)). As Severance concedes, the Commonwealth can charge separate murders separately under Code § 18.2-31(8), and it necessarily follows that each charge for murder can result in a separate conviction under the statute.

Severance claims that, with or without *Blockburger*, overarching double jeopardy principles permit a court to impose punishment under Code § 18.2-31(8) for only *one* of those convictions for murder. We know of no precedent for this view. The Fifth Amendment to the Constitution of the United States declares that no person shall "be subject for the same offence to be

---

[7] In this respect, Code § 18.2-31(8) is unlike criminal statutes such as Code § 18.2-270(C)(1), which expressly provides that if a defendant is convicted of three DUI offenses within a ten-year period, his third offense is punishable as a Class 6 felony.

6

twice put in jeopardy of life or limb." U.S. Const. amend. V.[8] This constitutional guarantee provides protection against several forms of double jeopardy. *See Commonwealth v. Gregg*, ___ Va. ___, ___, 811 S.E.2d 254, 257 (2018). In the simultaneous-prosecution context, the prohibition against double jeopardy protects against "multiple punishments for the same offense." *Id.* (citation omitted); *see also Ex parte Lange*, 85 U.S. (18 Wall.) 163, 168 (1874). "In the prosecution for two crimes in the same trial, the double jeopardy defense does not apply unless (a) the defendant is *twice* punished for *one criminal act*, *and* (b) the two punishments are either *for the same crime* or one punishment is for a crime which is a lesser included offense of the other." *Coleman v. Commonwealth*, 261 Va. 196, 200, 539 S.E.2d 732, 734 (2001) (third emphasis in original). This formulation of the doctrine tracks the historical view that "[t]o give our constitutional provision the force evidently intended, and to render it effectual, 'the same offence' must be interpreted as equivalent to the same criminal act." 1 Joel Prentiss Bishop, Bishop on Criminal Law § 1060, at 785 (John M. Zane & Carl Zollmann eds., 9th ed. 1923).

In this case, Severance was not punished twice for "one criminal act," *Coleman*, 261 Va. at 200, 539 S.E.2d at 734, because killing two victims at two different times in two different places constitutes two different criminal acts. In the words of the Fifth Amendment, Severance was not put in jeopardy "*twice*" for the "*same offence*." U.S. Const. amend. V (emphases added). He was put in jeopardy *twice* for *two* criminal offenses based on *two* criminal acts: murdering Kirby within three years of murdering Lodato and murdering Lodato within three years of murdering Kirby — two murders, two convictions, two punishments.

---

[8] "Virginia's constitutional guarantee against double jeopardy affords a defendant the same guarantees as the federal Double Jeopardy Clause." *Stephens v. Commonwealth*, 263 Va. 58, 62, 557 S.E.2d 227, 230 (2002).

C.

Taking a slightly different tack, Severance argues that the trial court unconstitutionally imposed multiple punishments on him because his convictions for the murders of Kirby and Lodato involved "the same elements," "the same proof," and "the same conduct." Appellant's Br. at 5. He relies on cases addressing multiple punishments imposed upon "identical conduct" or the "same act or transaction."[9] *See, e.g.*, *id.* at 9, 12 (first citing *Andrews v. Commonwealth*, 280 Va. 231, 278, 699 S.E.2d 237, 264 (2010); and then citing *Blockburger*, 284 U.S. at 304). Our colleague in dissent, analogizing to the "commutative law" in mathematics, joins Severance in this line of reasoning. *See post* at 12.[10] We respectfully disagree.

It is true that some crimes involve discrete *transactions* rather than discrete *acts*. *See generally* John L. Costello, Virginia Criminal Procedure § 51.3[4], at 811 (4th ed. 2008). *Blockburger* is the best-known example of this distinction. That case involved "two sales" of illegal narcotics that the defendant claimed constituted a single transaction. The United States Supreme Court held that each of the "several successive sales constitute[d] a distinct offense,

---

[9] Severance also made other arguments before this Court and the Court of Appeals that rely on *Andrews*, including: (1) that "the more statutorily consistent practice would be to . . . indict both murders as one capital count," Reply Br. at 2 n.1; and (2) that "when the defendant is tried for capital murder based on multiple victims, the number of capital convictions permitted is determined by the . . . number of three-year periods under [Code] § 18.2-31(8)," CAV Reply Br. at 10. In oral argument before this Court, he expressly argued that we should interpret Code § 18.2-31(8) in the same manner that we have interpreted Code § 18.2-31(7). *See* Oral Argument Audio at 14:30 to 14:56. None of these arguments, however, resolves the threshold issue that the Kirby and Lodato murders are *two separate criminal acts* and that the related sentences are therefore beyond the scope of a double jeopardy analysis.

[10] The "commutative law," as relevant here, states that rearranging the order in which numbers are added does not change the sum value. *See post* at 12. So, "a+b" equals "b+a." *Id.* The commutative law, applied to this case, merely means that the statement that Severance murdered Kirby and Lodato within a three-year period is every bit as true as the statement that Severance murdered Lodato and Kirby within a three-year period. This truism sheds little light on the legal issues in this case.

8

however closely they may [have] follow[ed] each other." *Blockburger*, 284 U.S. at 302. The sales were not a single transaction because they did not arise from a "single" impulse. *Id.* "If successive impulses [were] separately given, even though all unite[d] in swelling a common stream of action, separate indictments lie." *Id.* (citation omitted). This reasoning alone undermines any conclusion that a pattern of discrete criminal acts can be cobbled together as a single transaction for purposes of determining whether multiple punishments were imposed in violation of the Double Jeopardy Clause.

Despite these well-established principles, Severance asserts that our holding in *Andrews* opens the door to his argument. We do not share this view of *Andrews*. In that case, the defendant killed two men during a robbery. Though he was convicted and sentenced for four capital murders, he argued that only two of the sentences violated the multiple-punishments doctrine: a sentence for killing "more than one person as part of the same act or transaction" under Code § 18.2-31(7) and a sentence for killing "more than one person within a three-year period" under Code § 18.2-31(8). *See Andrews*, 280 Va. at 278-79, 699 S.E.2d at 264. We explained that subsections (7) and (8) involve a predicate offense that serves to "elevate first degree murder to capital murder." *Id.* at 281, 699 S.E.2d at 265.

> The gradation criterion of Code § 18.2-31(7) is proof of a predicate felony, the commission of a murder in the same act or transaction in which another, or several other, murders occur. The gradation criterion of Code § 18.2-31(8) likewise requires proof of the commission of at least two murders within a three-year period, each of which would constitute a predicate felony. It is obvious, however, that in many instances the same operative facts would be sufficient to prove either offense. In this sense, both offenses can be viewed as having gradation criteria defining the status of the defendant as having committed multiple homicides.

*Id.* at 281, 699 S.E.2d at 266.

9

The issue in *Andrews* was whether the defendant could be sentenced for capital murder convictions *under two different statutory provisions* when "all of the constituent crimes" under one provision, Code § 18.2-31(8), "also occur[red] as part of the same act or transaction" under the other provision, Code § 18.2-31(7). *Andrews*, 280 Va. at 282, 699 S.E.2d at 266. Because the two killings occurred in the "same act or transaction" of one robbery, we held that one criminal offense was wholly subsumed within the other.[11]

*Andrews* made clear that double jeopardy principles do not bar capital sentences for violations of both Code §§ 18.2-31(7) and 18.2-31(8) when at least one murder charged under subsection (8) "occurred as part of a separate act or transaction" from any other murders charged under subsection (7). 280 Va. at 288 n.19, 699 S.E.2d at 269 n.19. We later described our narrow holding in *Andrews* in exactly these terms. "[T]he double jeopardy prohibition against multiple punishments is violated when a defendant receives separate sentences under Code §§ 18.2-31(7) and (8) when *each of the constituent murders for both convictions occurred as part of the same act or transaction*." *Gray v. Warden of the Sussex I State Prison*, 281 Va. 303, 304, 707 S.E.2d 275, 280 (2011) (emphasis added) (citing *Andrews*, 280 Va. at 287-88, 699 S.E.2d at 269-70).

---

[11] Even in situations where "multiple offenses may be the 'same,' an accused may be subjected to legislatively 'authorized cumulative punishments.' 'It is judicial punishment in excess of legislative intent which offends the double jeopardy clause.'" *Johnson*, 292 Va. at 741, 793 S.E.2d at 323 (citations omitted); *see, e.g.*, *Payne v. Commonwealth*, 52 Va. App. 120, 127-28, 661 S.E.2d 513, 516-17 (2008) (affirming convictions for felony homicide and aggravated involuntary manslaughter for killing one person), *aff'd*, 277 Va. 531, 540-41, 674 S.E.2d 835, 839-40 (2009). This principle applies in the context of capital crimes no less than any other. *See, e.g.*, *Winston v. Commonwealth*, 268 Va. 564, 614-15, 604 S.E.2d 21, 49-50 (2004) (affirming two capital murder convictions for killing one person); *Payne v. Commonwealth*, 257 Va. 216, 227-29, 509 S.E.2d 293, 300-01 (1999) (affirming four capital murder convictions and four death sentences for killing two people).

10

In contrast to the situation in *Andrews*, Severance twice violated the same statutory provision by murdering two victims, with each murder serving as the "gradation criterion" for the other and neither murder occurring while he was engaged in the "same act or transaction," *Andrews*, 280 Va. at 281, 699 S.E.2d at 266. "[T]wo offenses arise out of the 'same act or transaction' if they are connected so closely 'in time, place and circumstance that a complete account of one charge cannot be related without relating details of the other charge.'" *Id.* at 285, 699 S.E.2d at 268 (quoting *Woodfin v. Commonwealth*, 236 Va. 89, 92, 372 S.E.2d 377, 379 (1988)). The murders of Kirby and Lodato plainly do not fit these parameters.

In short, Severance was convicted and sentenced for two criminal acts: murdering Kirby within three years of murdering Lodato and murdering Lodato within three years of murdering Kirby. He committed these criminal acts at two separate dates and in two separate places, thus warranting punishment for two capital murder convictions. He committed "distinct and separate acts" that were "neither identical nor lesser-included [criminal offenses] for double jeopardy purposes," *Martin v. Commonwealth*, 221 Va. 720, 723, 273 S.E.2d 778, 780 (1981); *see also Ohio v. Johnson*, 467 U.S. 493, 500 (1984) (holding that double jeopardy principles do not prohibit punishment for "multiple offenses in a single prosecution").

The disconnect in Severance's reasoning stems from his misplaced reliance on cases involving a single criminal act or transaction violating two criminal statutes — despite the fact that he committed two separate criminal acts that violated the same statute. Not one of the authorities he cites addresses this scenario, and for good reason: A criminal statute that allows separate convictions for separate criminal acts does not implicate, much less constitutionally offend, double jeopardy principles.

11

III.

In sum, the Court of Appeals did not err in affirming Severance's convictions and sentences for the capital murder of two individuals within a three-year period in violation of Code § 18.2-31(8).  We thus affirm the judgment of the Court of Appeals.

*Affirmed.*

JUSTICE POWELL, dissenting.

In mathematics, there is a principle known as the commutative law, which stands for the proposition that the outcome is generally unchanged by the order in which the terms are stated.[1] Thus, a+b=b+a.  Metaphorically applying this principle to the present case demonstrates that the offense of murdering Kirby and, less than three months later, murdering Lodato is the same as murdering Lodato less than three months after murdering Kirby.  Either way it is stated, the result is the same: "The willful, deliberate, and premeditated killing of more than one person within a three-year period."  Code § 18.2-31(8).  The majority, however, holds that by changing the order in which the victims are identified in an indictment, a single criminal offense under Code § 18.2-31(8) can become multiple criminal offenses under the same statutory provision without implicating the double jeopardy provisions of the Fifth Amendment.  Given that the only actual difference between these separately charged offenses is how they are presented in the indictment, I must respectfully dissent.

---

[1] *See* Webster's Third New International Dictionary 461 (defining "commutative law" as "a law applicable to certain mathematical operations" in which "the order of the elements involved is immaterial" and defining "commutative" as "a mathematical or logical operation[ ] consisting of a step or sequence of steps in which the final result is independent of the order of the elements or steps").

12

My first point of disagreement with the majority concerns the interpretation of the main thrust of Severance's argument. As we diverge with regard to the argument being made, we necessarily reach different conclusions. It appears to me that the majority focuses on Severance's alternative argument (i.e., the *Blockburger* analysis) and then limits its analysis of Severance's primary argument to a discussion of *Andrews v. Commonwealth*, 280 Va. 231, 699 S.E.2d 237 (2010), the case that Severance relies heavily on. The majority concludes that *Andrews* is inapposite because that case involved the application of two different statutory provisions, whereas the present case involves the application of the same statutory provision twice.

In doing so, I believe the majority misses the thrust of Severance's primary argument and his reliance on *Andrews*. As I understand Severance's argument, it is that the double jeopardy prohibition against multiple punishments is violated where the same predicate act is used to impose multiple capital punishments. He relies on *Andrews* because, in that case, we held that the double jeopardy prohibition against multiple punishments is violated where the exact same predicate act is used to impose two capital punishments under similar statutory provisions (i.e., Code §§ 18.2-31(7) and (8)). *See, e.g.*, *id.* at 286-87, 699 S.E.2d at 269. If there is any doubt that this is the nature of Severance's argument, it is extinguished in his Reply Brief, where he states:

> In the present case, the nexus crime consists only of the fact that the murders of Ruthanne Lodato and Ronald Kirby occurred within a three-year period. No other gradation was alleged in the indictment. Thus, to allow Mr. Severance to face capital sentences for each of these two murders would fail to protect him from multiple punishments for the same offense as guaranteed by the double jeopardy clause.

13

Addressing the merits of Severance's actual argument demonstrates that he is, in fact, correct. First, even though Severance was charged under Code § 18.2-31(8), in my opinion, this Court's jurisprudence on Code § 18.2-31(7) is dispositive. As we explained in *Andrews*, the gradation criterion of Code § 18.2-31(8) is similar to the gradation criterion of Code § 18.2-31(7). 280 Va. at 281, 699 S.E.2d at 266. In fact, "in many instances the same operative facts would be sufficient to prove either offense." *Id.* Due to these similarities, the Court explicitly held that

> the Commonwealth is free to indict the defendant under Code § 18.2-31(8) for the murder of more than one person within a three-year period when each of the constituent murders occurred as part of the same act or transaction, and also indict the defendant for capital murder under Code § 18.2-31(7) for the same murders. *However, if the Commonwealth obtains convictions on both indictments it may not seek to have separate punishments imposed for each offense. Rather it must elect which indictment it will proceed upon in the penalty-determination phase of the trial. For these reasons, we hold that the imposition of two death sentences upon Andrews for the convictions under Code §§ 18.2-31(7) and -31(8) violated the double jeopardy prohibition against multiple punishments for the same offense.*

*Andrews*, 280 Va. at 287-88, 699 S.E.2d at 269-70 (emphasis added).

Code §§ 18.2-31(7) and (8) are the only capital offenses that require the killing of more than one person. In other words, these two offenses are the only ones that include a "numerical ingredient necessary to charge capital murder." *Morris v. Commonwealth*, 228 Va. 206, 210, 321 S.E.2d 633, 635 (1984). Therefore, "both offenses can be viewed as having gradation criteria defining the status of the defendant as having committed multiple homicides." *Andrews,* 280 Va. at 281, 699 S.E.2d at 266. In fact, the only significant difference between these two offenses is in the timing within which the killings must occur. Under Code § 18.2-31(7), the killings must occur "as a part of the same act or transaction," whereas under Code § 18.2-31(8), the killings must occur "within a three-year period." Given that the offense punishable under

14

Code § 18.2-31(7) is, in effect, a subset of the offense punishable under Code § 18.2-31(8), these differences are negligible at best. Therefore, for all intents and purposes, our jurisprudence on Code § 18.2-31(7) also applies to Code § 18.2-31(8). Under the rationale of *Andrews*, it would be anomalous to allow one capital murder sentence when two similar subsections of the Code are implicated (i.e., Code §§ 18.2-31(7) and (8)) but allow two such sentences when only one subsection is implicated.

In *Buchanan v. Commonwealth*, 238 Va. 389, 384 S.E.2d 757 (1989), the Court explained that the quantum of capital murder offenses punishable under Code § 18.2-31(7) is determined by looking to the number of acts or transactions, not the number of victims. In explaining its rationale, the Court stated:

> [Code § 18.2-31(7)] describe[s] capital murder as the "willful, deliberate, premeditated killing of more than one person as a part of the same act or transaction." This means that it took the killing of at least two people as part of the same act or transaction to constitute one capital murder under [Code § 18.2-31(7)]. Here, four people were killed; thus, there was the theoretical possibility that Buchanan could be convicted of two capital murders. *The critical issue is how many acts or transactions were involved.* If all four individuals were killed in one act or transaction, Buchanan could only be convicted of one capital murder. If two individuals were killed as part of one act or transaction and the two others were killed as part of a second, different act or transaction, then Buchanan could be convicted of two capital murders.

*Id.* at 397, 384 S.E.2d at 762.

Thus, under *Buchanan*, the number or acts or transactions is the dispositive factor for Code § 18.2-31(7). Stated differently, if several killings occurred in a single act or transaction, it doesn't matter if two people or 100 people are killed because the number of offenses under Code § 18.2-31(7) remains the same: one. *Id.*

Applying the logic of *Buchanan* establishes that the critical issue in determining the number of capital punishments that may be imposed under Code § 18.2-31(8) is not the number

15

of acts or transactions, but the timeframe in which the murders occurred. All of the murders committed by an individual that occur within a single three-year period give rise to a single offense under Code § 18.2-31(8). This does not mean that an individual who commits multiple murders within a three-year period cannot be charged with or convicted of multiple counts under Code § 18.2-31(8). *See Andrews*, 280 Va. at 287, 699 S.E.2d at 269. Rather, where the indictments and convictions relate to what is functionally the same offense, the Commonwealth "may not seek to have separate punishments imposed for each offense" without running afoul of the double jeopardy prohibition against multiple punishments for the same offense. *Id.* at 287-88, 699 S.E.2d at 269.

In its attempt to rebut Severance's claim that he is being punished twice for the same offense, the majority focuses on the number of acts, not offenses, that Severance committed. Indeed, the majority bases its conclusion on its finding that Severance committed "two criminal offenses based on two criminal acts." *Ante* at 7. To a degree, I agree with the majority. Severance did commit two separate criminal acts: he murdered Kirby and he murdered Lodato. Where I disagree with the majority, however, is that, the clear language of the statute establishes that a single offense under Code § 18.2-31(8) will generally require that a defendant commit two separate acts. Under Code § 18.2-31(8), it takes the killing of at least two people within a three-year period to constitute a single capital offense. Although two people could be murdered through a single act within the required time period, nothing in the statute requires that the murders occur in a single act. Indeed, given the amount of time within which the two murders must occur, it is clearly implied that at least two acts may be necessary to complete the offense.[2]

---

[2] That is not to say that the killing of two people in a single act would not also constitute an offense under Code § 18.2-31(8). It would; just as it would also constitute an offense under Code § 18.2-31(7). *See Andrews*, 280 Va. at 281, 699 S.E.2d at 266. My point is that Code

16

Moreover, the fact that the specific acts committed by Severance would support multiple convictions is not dispositive. According to the majority, Severance was convicted of "murdering Kirby within three years of murdering Lodato and murdering Lodato within three years of murdering Kirby – two murders, two convictions, two punishments." *Ante* at 7. I agree that two murders can give rise to two separate murder convictions and punishments. Alternatively, these two murders, because they occurred within a three-year period, could give rise to a single murder conviction and a single capital murder conviction under Code § 18.2-31(8), along with the related punishments. Indeed, I do not dispute that these two acts could give rise to an almost infinite combination of offenses and punishments without violating the prohibition against double jeopardy. However, the number of combinations of convictions and punishments that may arise from these two murders is not the issue here; rather, the issue in this case is much more narrow, limiting the Court to determining the number of capital murders that may be punished under Code § 18.2-31(8) for two murders that occur within a three-year period.

Here, both of Severance's capital offenses involved the same murders of the same victims within a single three-year period. The only difference between these offenses is the order in which the victims are listed in the indictment, which is not an element of the crime.[3] In other

---

§ 18.2-31(8) contemplates that more than one act may be necessary in order to complete the offense.

[3] I simply cannot agree with the majority's logic that a new capital offense arises simply by changing the order in which the victims are named in the indictment. Indeed, taking this approach to its logical conclusion would mean that the theoretical limitation on the number of capital offenses that could be supported under either Code §§ 18.2-31(7) or (8) would be determined by the number of victims, not the number of acts or transactions (Code § 18.2-31(7)) or the time period within which the murders occurred (Code § 18.2-31(8)). In the context of Code § 18.2-31(7), we have clearly held otherwise. *See Buchanan*, 238 Va. at 397, 384 S.E.2d at 762 (recognizing that "[t]he critical issue is how many acts or transactions were involved," not the number of victims, for determining the number of capital offenses under Code § 18.2-31(7)). Given the similarities between the two statutory provisions, it is hard to conceive of why we

words, in every aspect these two capital offenses are identical.  Therefore, in my opinion, only a single violation of Code § 18.2-31(8) occurred.[4]  As the imposition of two life sentences for a single offense violates the double jeopardy prohibition against multiple punishments, I would reverse the decision of the Court of Appeals and remand the matter to the trial court with instructions to vacate one of the life sentences.

---

would look to the number of victims for making a similar determination under Code § 18.2-31(8).

[4] To be clear, my position is limited to the number of capital offenses that occurred under Code § 18.2-31(8).  Severance was not charged with and we are not addressing any other capital offenses that he may have committed.